IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-154-FL

| | |
|---|---|
| JENNIFER CAROL LOCKLEAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Jennifer Carol Locklear ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-26] be granted, Defendant's Motion for Judgment on the Pleadings [DE-28] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for DIB and SSI on December 29, 2010 (Tr. 141-42, 179-78), alleging disability beginning January 31, 2006 (Tr. 258, 262). The applications were

denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 141-42, 179-78.) On February 20, 2013, a hearing was held before Administrative Law Judge Tracy Daly ("ALJ"), who issued an unfavorable ruling on May 10, 2013. (Tr. 37, 43.) On May 21, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c), 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. §§ 404.1520a(e)(3), 416.920a(e)(3).

## III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not

engaged in substantial gainful employment since January 31, 2006. (Tr. 25.) Next, the ALJ determined Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease (COPD), asthma, osteoarthritis, and bipolar disorder." (*Id.*) The ALJ also listed the following non-severe impairments: "mammary cysts, carpel tunnel syndrome, and obstructive sleep apnea." (Tr. 26.) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26-28.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform light work and provided the following limitations:

> [T]he claimant is able to lift up to 20 pounds occasionally and lift or /carry up to10 pounds frequently. She can stand or walk for about 6 hours in an 8-hour work day and sit for up to 6 hours in an 8-hour work day with normal breaks. Additionally, as needed the claimant must be able to alternate between sitting or standing positions. Further, the claimant can never climb ladders ropes or scaffolds but is able to frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can frequently perform fine and gross manipulation bilaterally with her right upper extremity. In addition, the claimant is able to work in a low stress job with only occasional decision-making, occasional changes in the work setting, and occasional superficial interaction with the public.

(Tr. 28.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 29.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work. (Tr. 35.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 36-37.)

4

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on several grounds. Plaintiff first contends that the ALJ erred in failing to address listings coinciding with Plaintiff's COPD, asthma, and arthritis. Second, Plaintiff claims that the ALJ erred in evaluating the opinions of treating and non-treating physicians. Lastly, Plaintiff asserts that the ALJ erred in relying on VE testimony that was inconsistent with the *Dictionary of Occupational Titles* ("DOT") and failing to allow Plaintiff to question the VE concerning work capabilities given her global assessment of function ("GAF") scores.

### A. Listings

Plaintiff asserts that the ALJ erred in determining that Plaintiff's severe impairments included COPD, asthma, and arthritis but not analyzing these impairments under the corresponding listings. The only listing which the ALJ addressed was Listing 12.06 for anxiety related disorders. Plaintiff contends that the ALJ should have addressed Listings 3.02 (COPD), 3.03 (asthma), and Listings 1.02, 1.03, and 1.04 (arthritis). Plaintiff states, "While the defendant may argue that the evidence supports that the cited listings have not been met, the question of whether the claimant's impairments 'equal' the listings must also be determined by the ALJ." (Pl's Mem. J. Pleadings at 14 [DE #27].)

The burden of proof at step three is on the claimant to show that he meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. § 404.1525(e)(5). To

5

establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for that listing. *Zebley*, 493 U.S. at 531. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3 (Jul. 2, 1996). In determining whether a listing is met or equaled, the ALJ must "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding." 20 C.F.R. §§ 404.1526(c), 416.926(c).

Where a claimant has a severe impairment and the record contains ample evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue*, No. 5:11-CV-409-D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). Where the ALJ fails to make the necessary comparison or fails to explain the basis for his decision other than in a summary or conclusory fashion, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. *Cook*, 783F.2d at 1173; *cf. Johnson v. Astrue*, 5:08-CV-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) ("Meaningful review may be possible even absent the explicit step-by-step analysis set out in *Cook* where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof.").

Here, although the ALJ did not address Listings 3.02, 3.03, 1.02, 1.03, or 1.04, any error is harmless because Plaintiff has failed to show she meets or equals the criteria under any of the listings. Listing 3.02A provides that one meets the listing for COPD if she has an "$FEV_1$ equal to

or less than the values specified in table 1 corresponding to the person's height without shoes." 20 C.F.R. § 404, Subpt. P, App. 1, 3.02A. Plaintiff testified that she was five feet six inches tall. (Tr. 52.) The $FEV_1$ that corresponds to 66-67 inches is 1.35 liters. 20 C.F.R. § 404, Subpt. P, App. 1, 3.02A. The $FEV_1$ that corresponds to 64-65 inches is 1.25 liters. *Id.* The only $FEV_1$ indicated in the record is from Dr. Somnath Naik on July 29, 2011 and was a value of 1.50 liters. Plaintiff does not meet Listing 3.02A and has not shown the existence of evidence to support a finding that her impairment is equal in severity to the criteria in Listing 3.02A.

Listing 3.03 for asthma requires a plaintiff to either (A) satisfy the same requirements under Listing 3.02A or (B) show that asthma attacks occur every two months or at least six times a year. 20 C.F.R. § 404, Subpt. P, App. 1, 3.03. Listing 3.03B further stipulates that "Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks. 20 C.F.R. § 404, Subpt. P, App. 1, 3.03B. While the record indicates Plaintiff has been hospitalized because of her asthma (Tr. 751, 823), Plaintiff does not provide evidence indicating and the record does not show that such attacks occurred every two months or six times in a year. Consequently, the evidence does not support a finding that she meets or equals Listing 3.03.

Plaintiff also asserts that the ALJ should have addressed listings 1.02, 1.03, and 1.04 in regards to Plaintiff's arthritis. However, Plaintiff has provided no evidence that Plaintiff suffers from a "gross anatomical deformity" as required by Listing 1.02, that Plaintiff has undergone "reconstructive surgery or surgical arthrodesis of a major weight bearing joint" as required by Listing 1.03, or that Plaintiff suffers from a disorder of the spine "resulting in compromise of a nerve root . . . or the spinal cord as required by Listing 1.04." 20 C.F.R. § 404, Subpt. P, App. 1,

7

1.02, 1.03, 1.04. Moreover, there is no evidence in the record of these required criteria or medical findings equal in severity to the criteria under the applicable listings.

"The ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is ample evidence in the record to support a determination that an impairment meets or medically equals a listing. *Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. May 12, 2009) (internal quotation marks omitted); *see Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986) (requiring an ALJ to "explain the reasons for the determination that [plaintiff's condition] did not meet or equal a listed impairment" where "there was ample evidence in that record" to support such a finding). Due to the absence of any evidence suggesting that Plaintiff's impairments could potentially meet or equal the requirements of the specified listings, the ALJ did not commit reversible error by failing to explicitly identify the listings and explain why Plaintiff's impairments do not meet or equal the criteria of the listings.

    **B.    Medical Opinions**

Next, Plaintiff asserts that the ALJ erred in the evaluation of treating, examining, and non-treating consultative physicians. Plaintiff further contends that the ALJ failed to give reasons for rejecting the opinions of the treating and examining physicians.

The general rule is that a treating source's opinion is entitled to more weight than a non-treating source's, and an examining source's opinion should be accorded more weight than the opinion of a non-examining source. 20 C.F.R. § 404.1527(c) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."). However, the

8

court is not required to give a treating physician's opinion controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2).

If not entitled to controlling weight, a treating physician's opinion must be assessed in light of the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 § C.F.R. 404.1527(c); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

Specifically, Plaintiff takes issue with the weight the ALJ assigned Dr. Somnath Naik, Dr. Donald W. Morando, and Kevin Sampson, P.A.

### i. Dr. Somnath Naik

Dr. Naik provided a medical source statement on August 22, 2012, stating in full, "The above named patient suffers from Moderate Persistent Bronchial Asthma. Due to this medical condition, she is not able to hold a job." (Tr. 768.) The ALJ addresses this opinion stating, "[Dr. Naik] provided a medical source statement regarding the claimant where the doctor opined that the claimant was unable to work because she suffers from moderate persistent bronchial asthma. However, it is unclear from the medical record how Dr. Naik draws this conclusion." (Tr. 30.)

Dr. Naik's medical source statement consists merely of a diagnosis and an indication that Plaintiff cannot work. An opinion on whether a Plaintiff is disabled is not a medical opinion, and the issue of disability is one reserved to the commissioner. 20 C.F.R. § 404.1527(d). Therefore, the ALJ did not err in failing to give Dr. Naik's opinion controlling or significant weight.

### ii.   Dr. Morando/Mr. Sampson

Also at issue is an opinion provided on January 14, 2013, which indicates that Plaintiff is limited to sedentary work. The opinion states that Plaintiff's diagnoses are "COPD, Asthma, Osteoarthritis, Anxiety, Bipolar Disorder" and lists her symptoms as "Chronic SOB, Joint pain, Anxiety, Depression." (Tr. 843.) The opinion also indicates that Plaintiff has had monthly visits since March 2010. (*Id.*)

The ALJ's analysis giving little weight to the Dr. Morando/Mr. Sampson opinion is not supported by substantial evidence. First, the ALJ states that Plaintiff's spirometry tests showed no significant findings. (Tr. 34.) While Plaintiff's 2008 spirometry test was not significant, Plaintiff's 2011 spirometry test indicates her $FEV_1$ was only at 50 to 59%. (Tr. 765.) Additionally, the ALJ reports that at Dr. Locklear's 2008 consultative exam, Plaintiff exhibited no severe wheezing, coughing, or shortness of breath. (Tr. 34.) However, Dr. Locklear again examined Plaintiff on April 13, 2011, and indicated "Lungs: Revealed expiratory and inspiratory wheezing in all lung fields." (Tr. 681.) The ALJ failed to address Dr. Locklear's second consultative exam anywhere in his opinion and further failed to mention any indication of wheezing by Plaintiff . Furthermore, there is extensive documentation that Plaintiff's treating physicians observed wheezing and "bibalsilar rales" in numerous medical appointments spanning at least two years. (Tr. 724, 726, 729, 733, 736, 748, 819-20, 823-24, 827-28, 830, 834, 837, 840.)

The ALJ additionally reasons,

> The conclusions [of the Dr. Morando/Mr. Sampson opinion] are also contradicted by imaging test results of the claimant's chest that show her lungs are clear, her heart is normal in size and the absence of any pneumothorax. In addition, radiographs show no evidence of acute cardiopulmonary disease. Furthermore, the conclusion that the claimant is limited to a sedentary RFC is directly controverted by radiographs. These images show the claimant does not have spondylosis, spondylosthesis, significant disc space narrowing or endplate osteophyte formation. Consequently, the opinion's conclusions about the claimant's functional capacity are unsupported by medical findings and the totality of the evidence in this case; the opinion deserves little weight in this case.

(Tr. 34.) The Dr. Morando/Mr. Sampson opinion only addresses Plaintiff's diagnoses of COPD, asthma, osteoarthritis (of the knee), anxiety, and bipolar disorder. (Tr. 768.) Plaintiff does not contend and the Dr. Morando/Mr. Sampson opinion does not address cardiopulmonary disease or disorders in Plaintiff's spine. Thus, the information cited by the ALJ is not relevant to the diagnoses upon which this opinion is based or the severity of impairments addressed in this medical opinion finding Plaintiff limited to sedentary work. Therefore, the ALJ's analysis concerning the Dr. Morando/Mr. Sampson opinion is not supported by substantial evidence and the case should be remanded for further proceedings.

### C. Vocational Expert

Lastly, Plaintiff contends that the ALJ erred in relying on the VE's testimony because (1) it was inconsistent with the DOT, (2) Plaintiff was prevented from asking the VE about the vocational significance of Plaintiff's GAF scores, and (3) the ALJ abruptly ended the hearing, disallowing Plaintiff's attorney from fully questioning the VE.

The Social Security regulations do not require that an ALJ's step-five findings be based upon the DOT. Where, however, an ALJ relies upon vocational expert testimony in making a disability determination, the ALJ must identify and obtain a reasonable explanation for any conflicts between the expert's testimony and information contained in the DOT. SSR 00-4p, 2000

11

WL 1898704 (Dec. 4, 2000). Additionally, "a VE who purports to rely on the DOT for his opinion must rely on a *correct* recitation of the DOT. . . . [I]t is only logical that, if a VE's testimony is based on a misunderstanding or misstatement of DOT criteria, then an ALJ's decision based, in turn, on such testimony cannot be said to be supported by 'substantial evidence.'" *Oxendine v. Massanari*, 181 F. Supp. 2d 570, 574 (E.D.N.C. 2001).

Plaintiff contends that it was error for the ALJ to preclude her from questioning the VE concerning GAF scores. "The GAF scale is the scale used in the psychiatric evaluation system endorsed by the American Psychiatric Association." *Martin v. Colvin*, No. 7:13-CV-273-FL, 2015 WL 1346990, at *5 (E.D.N.C. Mar. 24, 2015). It is used by mental health professionals to rate an individual's level of social, occupational and psychological functioning. Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994) ("DSM-IV"). A GAF score represents a practitioner's subjective assessment of the patient's functional capacities for the preceding twelve months along a hypothetical continuum of mental health-illness ranging from 1-100, with 100 being the highest level of functioning. *Id.*

GAF scores "do[] not have a direct correlation to the severity requirements" of the Social Security Administration's mental disorders listings, though they are commonly used by medical sources in assessing an individual's functional abilities and limitations. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764, (Aug. 21, 2000). Thus, a GAF rating is not dispositive of the issue of disability. Some ALJs and experts have questioned the vocational significance of GAF scores in Social Security cases. *See, e.g.*, *Smith v. Astrue*, No. 2:11-CV-600, 2012 WL 3156597, at *15-16 (S.D. W. Va. Aug. 3, 2012) (VE testified that "the GAF are subjective findings that have no vocational significance"); *Long v. Comm'r of Soc. Sec.*, No. SAG-12-2407, 2013 WL 2338824, at *1 (D. Md. May 28, 2013)

(allowing the VE to testify concerning GAF scores, but concluding that it constituted a medical conclusion outside the purview of the VE's expertise). However, it has generally been held that GAF scores, though not determinative of disability, are medical evidence that informs the ALJ's judgment. *See Rios v. Comm'r of Soc. Sec.*, 444 Fed. App'x 532, 535 (3d Cir. 2011); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (2002); *Martin*, No. No. 7:13-CV-273-FL, 2015 WL 1346990, at *5; *Emrich v. Colvin*, No. 1:13-CV-1012, 2015 WL 867287, at *9 (M.D.N.C. Mar. 2, 2015); *Kozel v. Astrue*, No. JKS-110-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012); *Crockett v. Astrue*, No. 2:10-CV-64, 2011 WL 2148815, at *11 (W.D. Va. June 1, 2011), *mem. & recommendation adopted*, 2011 WL 2606889 (June 30, 2011).

In this case, Plaintiff's counsel sought to question the VE concerning Plaintiff's GAF scores, which were indicative of moderate to serious functional impairment. Specifically, Plaintiff's attorney asked the VE whether someone who persistently had GAFs of 55 or less would be capable of performing consistently in the competitive workplace. The ALJ interrupted the questioning, stating that the VE was not qualified to answer the question because it called for a medical opinion. When counsel attempted to make a proffer of the VE's response, the ALJ denied counsel's request, stating:

> You asked a question, and I indicated that I wasn't going to allow it. The GAF score is something that's assigned by a medical doctor. Dr. Black is in vocational rehabilitation. So he is not qualified to answer a question that falls upon him to speculate as to what mental limitations may arise from a GAF score in that vein. I'm well aware of her – the GAF scores that she has in her – in her medical record and by diagnosis and treatment, and I'm going to factor that it. And I did factor that into a hypothetical that I posed. But Dr. Black cannot give you an answer, because he's not qualified to give you an answer about whether a certain GAF score would eliminate the mental capacity to do jobs. That's why I'm not allowing that question.

(Tr. 98-99.) Plaintiff's counsel then sought to inquire of the VE whether he agreed "that a GAF score is vocationally insignificant." (Tr. 99.) The ALJ cut in before the VE responded, stating:

13

> Well, what part of – what part of "I'm not allowing you to ask that question" or the doctor to answer that question do you not understand, [counsel]?
>
> . . .
>
> He's not going to answer that question.
>
> . . .
>
> He's not going to answer that question, okay? I don't care whether he agrees. He's not a medical doctor. He's not qualified to answer that question. Do you have a different question?

(Tr. 99.) Plaintiff's attorney then sought to inquire whether the VE was familiar with GAF scores, at which point the ALJ terminated the hearing:

> Okay. Okay. No more questions. We're done. I'm confident I fully understand the testimony of Dr. Black. Okay. Mrs. Locklear, this is going to conclude our hearing. . . .

(Tr. 99.)

Although considered medical evidence, GAF scores are an assessment of an individual's social, occupational and psychological capacities and should be considered by the ALJ in determining a claimant's RFC. Thus, VEs have routinely been questioned by both ALJs and attorneys concerning GAF scores. *See, e.g.*, *Gainey v. Colvin*, No. 7:14-CV-1-RJ, 2015 WL 1354555, at *5 (E.D.N.C. March 24, 2015); *Beasley v. Astrue*, No. 7:10-CV-232-FL, 2011 WL 7452698, at *4 (E.D.N.C. Oct. 17, 2011), *mem. & recommendation adopted,* 2012 WL 707091 (Mar. 5, 2012); *Minish v. Astrue*, No. 1:12-CV-01, 2013 WL 1010437, at *2 (W.D.N.C. March 14, 2013); *Brown v. Astrue*, No. CBD-10-1238, 2013 WL 937549, at *8, (D. Md. March, 8, 2013); *Love v. Astrue*, No. 3:11-CV-14-FDW-DSC, 2011 WL 4899989, at *1-2 (W.D.N.C. Sept. 6, 2011), *mem. & recommendation adopted*, 2011 WL 4899984 (Oct. 14, 2011); *Moody v. Astrue*, No. 2:10-CV-36, 2011 WL 1327346, at *2 (W.D. Va. April 6, 2011), *report and recommendation adopted*, 2011 WL2604887 (June 30, 2011); *Coats v. Astrue*, No. 3:08-68, 2009 WL 4545100, at *4 (S.D.

14

W. Va. Nov. 24, 2009); *Lawson v. Astrue*, No. 2:08-CV-24, 2009 WL 223731, at *5 (W.D. Va. Jan. 29, 2009). The ALJ erred in not allowing counsel to question the VE concerning the vocational significance, if any, of Plaintiff's GAF scores.

Plaintiff further contends that she was precluded from developing the record concerning errors with the VE's testimony. Plaintiff argues that the VE testified incorrectly about the functional requirements of two positions identified (Salad Maker and Parking Lot Attendant) and that Plaintiff was precluded from questioning the VE about the only other job identified (Routing Clerk) because the ALJ discontinued her cross-examination and terminated the hearing. The Commissioner concedes that the VE incorrectly identified Salad Maker as a job Plaintiff could perform but argues that any error was harmless based upon the VE's identification of the Parking Lot Attendant and Routing Clerk jobs. Given the undersigned's recommendation that the case be remanded on other grounds, no opinion is expressed as to the harmlessness of the ALJ's reliance on the VE's testimony concerning the incidence of jobs available to Plaintiff. It is recommended, however, that the Commissioner be instructed to receive on remand additional expert testimony concerning Plaintiff's occupational abilities.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-26] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-28] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 6, 2015**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of

Case 7:14-cv-00154-FL   Document 30   Filed 07/20/15   Page 15 of 16

the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 20th day of July 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge